UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
DERICK HERNANDEZ,

                    Petitioner,

                                        MEMORANDUM AND ORDER
          -against-                     14-CR-0264(JS)


UNITED STATES OF AMERICA,

                    Respondent.
-------------------------------------X
APPEARANCES
For Petitioner:     Derick Hernandez, pro se
                    #83519-053
                    Federal Correctional Complex, Allenwood USP
                    P.O. Box 3000
                    White Deer, Pennsylvania 17887

For Respondent:     Michael R. Maffei, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York 11722


SEYBERT, District Judge:

          On December 13, 2019, pro se petitioner Derick Hernandez
("Petitioner") moved to vacate, set aside, or correct his
conviction and sentence under 18 U.S.C. § 924(c)(1)(A) pursuant to
28 U.S.C. § 2255 (hereafter, the "Motion").  (See ECF No. 606.)
On February 10, 2020, the Government opposed the Motion, arguing
that Petitioner's § 924(c) conviction is not predicated on an
impermissibly vague statute and, as such, Petitioner's claim has
no merit.  (See Opp'n, ECF No. 616.)  On April 6, 2020, Petitioner
replied, arguing that it is the elements, not the conduct, of the

underlying offense that determines whether it is a crime of violence. (Reply, ECF No. 615.) For the reasons that follow, Petitioner's Motion is DENIED.

BACKGROUND

I.   The Indictment and Guilty Plea

The Court presumes familiarity with the facts underlying this case, but provides the following summary for the reader's convenience. On July 28, 2015, Petitioner and his co-defendants, all members of the Rollin 60s, a set of the Crips street gang based in Roosevelt, New York (hereafter, the "Gang"),[1] were indicted under a sixty-six-count superseding indictment, charging counts of various racketeering and VICAR[2] offenses, weapons possession charges, and narcotics and firearm trafficking charges.[3] (See Superseding Indictment, ECF No. 120.) As to Petitioner, thirty-seven counts were brought, including: Conspiracy to Murder, in violation of 18 U.S.C. § 1959(a)(5)(Count Forty-Six); Attempted Murder, in violation of 18 U.S.C. § 1959(a)(5)(Count Forty-Seven); Assault with a Dangerous Weapon, in violation of 18 U.S.C.

---

[1]   (See Plea Tr., ECF No. 212, 18:19-19:8; Opp'n at 2.)

[2]   "VICAR" is an acronym for "Violent Crimes in Aid of Racketeering".

[3]   After his April 17, 2013 arrest, on May 6, 2014, Petitioner was initially indicted on one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii). (See Indictment, ECF No. 1.)

§1959(a)(3) (Count Forty-Eight); Witness Retaliation, in violation
of 18 U.S.C. § 1513(a)(1)(B) and § 1513(a)(2)(B) (Count Forty-
Nine); and, Witness Retaliation Conspiracy, in violation of 18
U.S.C. § 1512(f) (Count Fifty), with each of these counts related
to the Gang's attempted murder of Maurice Gardner (hereafter,
"Gardner Attempted Murder"). (See id. at 36-38.) Petitioner was
also indicted on Possession of a Firearm During a Crime of
Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), and
924(c)(1)(C)(i), et seq., (Count Fifty-One) which was predicated
on each of the five offenses related to the Gardner Attempted
Murder (Counts Forty-Six through Fifty). (See id. at 38.)

On February 16, 2016, Petitioner pled to two counts of
the Superseding Indictment: County Fifty-One, i.e., Use of a
Firearm in Furtherance of a Crime of Violence (i.e., the shooting
of Maurice Gardner), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii);
and Count Fifty-Six, i.e., Conspiracy to Distribute Controlled
Substances in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii)
et seq. (See Plea Tr., ECF No. 212.) During his plea, Petitioner
allocuted to the conduct as charged in Counts Forty-Six through
Fifty as the predicate for his § 924(c) conviction, including that,
in October of 2012, he and other Gang members and associates met
to discuss a plan to murder Maurice Gardner. (See id. at 19:9-
13.) Petitioner stated:

> The next day, on October 13, 2012, we
> finalized the plan to murder Maurice Gardner.
> The plan was for me to go to Maurice Gardner's
> house and ask him to come outside. A different
> co-conspirator was then supposed to go up to
> Maurice Gardner and shoot him. <u>On October 13,
> 2012[,] we carried out that plan, specifically
> I lured Maurice Gardner outside</u>. A different
> co-conspirator shot Maurice Gardner several
> times in the back paralyzing him from the
> waist down. <u>I participated in these crimes</u>
> because that's what was expected of me because
> of my membership and position of the Crips.

(Plea Tr. 19:13-23 (<u>emphasis added</u>); <u>see also</u> <u>id.</u> at 20:11-16

(testifying to luring Maurice Gardner out of the house and knowing

Gardner would be shot when he came out).)

As part of his plea agreement, Petitioner agreed that he

would not file an appeal or challenge his conviction if the Court

imposed a sentence of 240 months' incarceration or less. (<u>See</u>

Plea Tr. 9:7-24.) On October 13, 2016, the undersigned sentenced

Petitioner to a term of 120 months' imprisonment on Count Fifty-

One and a term of 120 months' imprisonment on Count Fifty-Six, to

run consecutively, followed by five years of supervised release.

(<u>See</u> Min. Entry, ECF No. 391; Sent'g J., ECF No. 369.)

II. <u>Post-Conviction Proceedings</u>

On December 13, 2019, Petitioner moved for the vacatur

of his conviction, arguing that his conviction on Count Fifty-One

is invalid because, pursuant to <u>United States v. Davis</u>, 139 S. Ct.

2319 (2019), conspiracy to commit murder no longer qualifies as a

§ 924(c) crime of violence under the statute's so-called residual clause. (See Motion at ECF pp. 13-14.) Yet, the Government relied upon Conspiracy to Commit Murder, 18 U.S.C. § 1951, to satisfy the 'crime of violence' element of § 924(c). (See id. at ECF p.4.) The Government opposes the Motion, initially arguing that it is barred because Petitioner waived collateral review as part of his plea agreement (see Opp'n at 4-6), and further arguing that, even if not barred, Petitioner's § 924(c) conviction was premised upon two still-valid predicate crimes of violence, i.e., attempted murder and assault (see id. at 10-12). In reply and in reliance upon United States v. Hill, 890 F.3d 51 (2d Cir. 2018), Petitioner contends that in applying the categorical approach, the elements of conspiracy to commit murder does not require a use of force; hence, his conviction is predicated only upon the now void residual clause of § 924(c). (Reply at 2.)

DISCUSSION

I.   The § 2255 Standard

Section § 2255(a) of Title 28 of the United States Code provides:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may

> move the court which imposed the sentence to
> vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).  To obtain relief under § 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted).  A petitioner must also show that the error had "substantial and injurious effect" that caused "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to a § 2255 motion).

To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152-53, 166 (1982).  A court must exercise its discretion sparingly because § 2255 applications "are in tension with society's strong interest in the finality of criminal convictions."  Elize v. United States, No. 02-CV-1530, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see also Brecht, 507 U.S. at 633-34.

II.  The Appeal Waiver Issue

As a threshold matter, the Court addresses whether Petitioner's Motion is barred by his appeal waiver in his plea agreement.  Generally, "[a] defendant's knowing and voluntary waiver of the right to . . . collaterally attack his conviction and/or sentence is enforceable." Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam).  A defendant knowingly agrees to an appeal waiver where he "fully understood the potential consequences of his waiver." United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) (internal quotation marks omitted). "[E]xceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000). For example, "[a] violation of a fundamental right warrants voiding an appeal waiver." United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011).

Here, under the plea agreement, Petitioner agreed not to appeal or otherwise challenge his conviction if the Court imposed a term of imprisonment of 240 months' incarceration or less. (See Plea Tr. 9:7-24.)  Upon that agreement, the Government argues Petitioner's Motion must be denied because the Court imposed a sentence of 240 months' imprisonment. (See J., ECF No. 369.) Indeed, Petitioner does not argue that his waiver was unknowing or involuntary.  See Garcia-Santos v. United States, 273 F.3d 506,

508 (2d Cir. 2001) (per curiam) (affirming that an appeal waiver was knowing and voluntary where a petitioner failed to claim that he did not understand the waiver in a plea agreement); Elliott v. United States, No. 17-CR-0127, 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019) (finding the petitioner's appeal waiver was enforceable where he did "not argue that his waiver was not knowing or voluntary."). However, in this instance, where Petitioner seeks habeas relief premised upon Davis, the Court finds Petitioner's appeal waiver is not enforceable.

Courts within this Circuit are divided whether, when a petitioner has agreed to a collateral attack waiver in a plea agreement, the waiver is enforceable when the petitioner seeks habeas relief pursuant to Davis. Compare Bonilla v. United States, No. 07-CR-0097, 2020 WL 489573, at *3 (E.D.N.Y. Jan. 29, 2020) (deeming a collateral attack waiver unenforceable because "'[a] violation of a fundamental right warrants voiding an appeal waiver'" and the petitioner's "due process right to challenge his conviction under a statute that the Supreme Court has retroactively declared unconstitutional [in Davis] is such a right" (quoting United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011)), and United States v. Lewis, No. 10-CR-0622, 2020 WL 2797519, at *5 (E.D.N.Y. May 22, 2020) (same), with Elliott, 2019 WL 6467718, at *4 (finding collateral attack waiver enforceable where the petitioner raised a Davis claim because "[c]ourts in this circuit

have consistently rejected § 2255 petitions . . . when criminal defendants waived those challenges in their plea agreements, even when the law subsequently changed in those defendants' favor"); but see Sanford, 841 F.3d at 579-81 (agreeing that a collateral attack waiver in a petitioner's plea agreement barred a successive § 2255 motion based upon a Johnson claim challenging petitioner's sentence); Leyones v. United States, No. 10-CR-0743, 2018 WL 1033245, at *3 (E.D.N.Y. Feb. 22, 2018) (where the petitioner raised a Johnson claim, declining to decide whether waiver was enforceable as the § 2255 motion failed on the merits).  The Second Circuit has not yet specifically addressed waiver enforceability in the context of habeas challenges brought pursuant to Davis. See, e.g., United States v. Bonner, 826 F. App'x 52, 56 n.2 (2d Cir. Sept. 11, 2020) (noting, without deciding, that the "Government has conceded that the appellate waiver in the parties' plea agreement does not bar [petitioner's] Davis challenge to his § 924(c) conviction"); see also Negron v. United States, No. 99-CR-1044(1), 2021 WL 633817, at *4 (E.D.N.Y. Feb. 18, 2021) (recognizing that the Second Circuit had not yet addressed "whether a Davis claim, in and of itself, vitiates an appeal waiver," but finding the Circuit Court's mandate "suggests that the Second Circuit does not view the appeal waiver in this case[-- which raises a Davis challenge to the underlying § 924(c) conviction--] as a bar to the [§ 2255] petition" (internal citation omitted)).

As in Negron and Bonilla, here, Petitioner challenges the constitutionality of his underlying conviction based upon the Supreme Court's Davis decision.  (See Motion at ECF p.4); see also Negron, 2021 WL 633817, at *3 ("In Bonilla v. United States, like here, the court considered whether an appellate waiver can bar a § 2255 claim that a § 924(c) conviction is invalid under Davis." (citation omitted)); see id. at *4 (collecting cases holding appeal waiver unenforceable in the face of Davis challenges to convictions); Bonilla, 2020 WL 489573, at *2 (rejecting the applicability of Sanford, which dealt with challenges to the sentence imposed, as opposed to the basis of the conviction itself, like in Davis, and refusing to deem the appellate waiver a bar to relief).  Finding the Negron and Bonilla courts' reasoning on the issue of the unenforceability of an appeal waiver in the face of a Davis challenge to an underlying § 924(c) conviction to be persuasive, this Court follows it.  Accordingly, Petitioner's appeal waiver does not bar the Court's consideration of the merits of Petitioner's Motion, to which the Court now turns.[4]

---

[4]  There is no issue of procedural default where the Court sentenced Petitioner prior to Johnson and Davis.  See, e.g., Aquino v. United States, No. 13-CR-0536, 2020 WL 1847783, at *2 (S.D.N.Y. Apr. 13, 2020) ("The Court finds that there was no procedural default in failing to raise a Johnson-type argument before Johnson was decided.").

III. <u>The Merits of Petitioner's Motion</u>

    A. <u>The Relevant Law</u>

        In <u>Johnson v. United States</u>, the Supreme Court held that the Armed Career Criminal Act's residual clause, that defined a "violent felony," was unconstitutionally vague and violated due process because it left "grave uncertainty about how to estimate the risk posed by a crime."  576 U.S. 591, at 593-97 (2015). Following <u>Johnson</u>, litigants sought to apply its holding to other statutes including, as relevant here, § 924(c).  <u>See, e.g.</u>, <u>Davis</u>, 139 S. Ct at 2325.  A defendant violates § 924(c) if he used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, a "crime of violence" or "drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  Section 924(c)(3) defines a crime of violence as "an offense that is a "felony" <u>and</u>

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A) & (B).  Subsection (c)(3)(A) is often referred to as the elements or force clause (hereinafter, the "Elements Clause"), with subsection (c)(3)(B) often called the residual or risk-of-force clause (hereinafter, the "Residual Clause").  <u>See Davis</u>, 139 S. Ct. at 2324.

In light of its recent holdings in <u>Johnson</u> and in <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204 (2018), in <u>Davis</u>, the Supreme Court invalidated the Residual Clause of § 924(c) as unconstitutionally vague. <u>See</u> <u>Davis</u>, 139 S. Ct. at 2325-27. Thus, a conviction under § 924(c) survives only if a predicate offense is a "crime of violence" under the Elements Clause. <u>See, e.g.,</u> <u>Rosario Figueroa v. United States</u>, No. 16-CV-4469, 2020 WL 2192536, at *2 (S.D.N.Y. May 6, 2020); <u>Vilar v. United States</u>, No. 16-CV-5283, 2020 WL 85505, at *1 (S.D.N.Y. Jan. 3, 2020).

As reiterated by the <u>Davis</u> Court, courts apply a categorical approach to determine whether an offense is a crime of violence under the Elements Clause. <u>See</u> <u>United States v. Hill</u>, 890 F.3d 51, 55 (2d Cir. 2018) (citing <u>Taylor v. United States</u>, 495 U.S. 575, 600 (1990)). Under the categorical approach, an offense is a crime of violence where the "minimum conduct necessary for a conviction of the predicate offense" involves violence. <u>See</u> <u>id.</u> at 55-56; <u>see also</u> <u>United States v. Culbert</u>, 453 F. Supp. 3d 595, 597 (E.D.N.Y. 2020). Courts "look only to the statutory definitions--<u>i.e.,</u> the elements--of the offense," to resolve whether "such conduct amounts to a crime of violence under § 924(c)(3)(A)." <u>Hill</u>, 890 F.3d at 55-56 (internal quotation marks and alterations omitted).

The categorical approach saves courts from determining the level of violence at issue on a case-by-case basis or from

making the general inquiry into "the kind of conduct that the crime involves in the ordinary case." Davis, 139 S. Ct. at 2326 (citing Dimaya, 138 S. Ct. at 1216).  A predicate crime will not support a conviction under the Elements Clause if there is "a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not" constitute a crime of violence.  Hill, 890 F.3d at 56 (internal quotation marks and citation omitted).

   B. Application of the Law to Petitioner's Claim

        Petitioner claims that conspiracy to commit murder cannot serve as the predicate crime of violence for his § 924(c) conviction because, pursuant to Davis, it no longer qualifies as a "crime of violence".  (See Motion at ECF p. 14.)  This is so. See United States v. Heyward, 3 F.4th 75, 78 (2d Cir. 2021) (holding conspiracy to commit murder does not qualify as a predicate crime supporting a § 924(c) conviction); see also United States v. Erbo, No. 97-CR-1105, 2020 WL 6802946, *2 (S.D.N.Y. Nov. 19, 2020) ("Following Davis, a mere conspiracy to commit a crime of violence will ordinarily fail to qualify under Section 924(c)'s force[, i.e., elements,] clause." (citing United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019), and Ianelli v. United States, 420 U.S. 770, 777 (1975))).  However, another offense may serve as a predicate if there is "legally sufficient proof that the crime was, in fact, committed."  See Johnson v. United States,

779 F.3d 125, 129 (2d Cir. 2015)(hereafter, the "Circuit <u>Johnson</u> Case")("Every circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." (collecting cases)); <u>United States v. Rivera</u>, 679 F. App'x 51, 55 (2d Cir. 2017) (summary order) (denying a petitioner's <u>Johnson</u> claim where the defendant's plea allocution provided sufficient proof for a predicate offense that was later dismissed at sentencing).  Here, conspiracy to commit murder was not the only predicate crime for Petitioner's § 924(c) conviction.

During his guilty plea, Petitioner allocated to conduct consistent with both attempted murder (Count Forty-Seven) and assault (Count Forty-Eight), and admitted to aiding and abetting the use, discharge, or possession thereof of a firearm in connection with, or in furtherance of, the attempted murder and assault of Maurice Gardner.  (<u>See</u> Plea Tr. 17-20.)  Thus, while one of the predicate offenses for Petitioner's § 924(c) conviction was conspiracy to commit murder, his plea allocution provides legally sufficient proof that the predicate crimes of attempted murder and assault were also, in fact, committed.  (<u>See</u> <u>id.</u> at 19:9-21 (Petitioner allocating to: having met with other Gang members to plan murdering Maurice Gardner; then carrying out the Gang's plan by luring Maurice Gardner outside so that a co-

conspirator could shoot Gardner; the co-conspirator then shooting Gardner "several times in the back paralyzing him from the waist down"); see id. at 20:11-16 (Petitioner further explaining that he lured Maurice Gardner outside knowing that he was going to get shot when he came out of the house).)  This is enough to establish Petitioner committed the predicate crimes of attempted murder and assault. See Circuit Johnson Case, 779 F.3d at 129-30 ("The plain language of § 924(c) requires only that the predicate crime of violence . . . have been committed; the wording does not suggest that the defendant must be separately charged with that predicate crime and be convicted of it."); see also Simmons v. United States, ___ F. App'x ___, 2021 WL 2308831, at *2 (2d Cir. June 7, 2021)(quoting Circuit Johnson Case; affirming district court's denial of § 2255 habeas relief where district court found petitioner's plea allocution of admitting to attempted Hobbs Act Robbery, even though that offense was not referenced in petitioner's plea agreement, was sufficient to establish a predicate crime in upholding petitioner's § 924(c) conviction). Moreover, this conclusion is buttressed by Petitioner's concession at sentencing that the underlying predicate crimes for his § 924(c) conviction were the attempted murder and assault of Maurice Gardner, which satisfied the Elements Clause of § 924(c). (See Sent'g Tr., ECF No. 391, 16-17.) Hence, (1) based upon the record before the Court, there is an adequate factual basis to support a

finding that Petitioner committed attempted murder and assault, see Rivera, 679 F. App'x at 55 (holding the plain language of § 924(c) requires only that the predicate crime had been committed and that the petitioner need not be charged with that predicate crime so long as there is legally sufficient proof that the crime was committed); (2) attempted murder and assault are "crimes of violence" under § 924(c)'s Elements Clause, see, e.g., United States v. Scott, 681 F. App'x 89, 95 (2d Cir. 2017) (summary order) (attempted murder is crime of violence); United States v. Medunjanin, No. 10-CR-19, 2020 WL 5912323, at *5 (E.D.N.Y. Oct. 6, 2020) (attempted murder and assault with a deadly weapon are crimes of violence); Abrue v. United States, No. 16-CV-5052, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020) (attempted murder is a crime of violence); and (3) this criminal conduct, admitted to by Petitioner, continues to serve as predicate crimes supporting Petitioner's § 924(c) conviction.  Thus, since Petitioner's § 924(c) conviction was predicated upon two crimes of violence that are not implicated by Davis, he is unable to satisfy his § 2255 burden.


CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's Motion (ECF No. 606) is DENIED.


16

IT IS FURTHER ORDERED that the Court: (1) declines to issue a certificate of appealability because Petitioner has not made a substantial showing that he was denied a constitutional right, see 28 U.S.C. § 2253(c)(2); and, (2) certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is denied for the purposes of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

IT IS FURTHER ORDERED that the Clerk of the Court: (1) mark CLOSED the corresponding civil case, Case No. 19-CV-7138; and (2) mail a copy of this Order to the pro se litigant at his address of record.

**SO ORDERED.**

_/s/ JOANNA SEYBERT____
Joanna Seybert, U.S.D.J.

Dated:  August _5_, 2021
        Central Islip, New York