UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

                                      <u>MEMORANDUM AND ORDER</u>

       -against-                     14-CR-0264(JS)

DERICK HERNANDEZ,

                   Defendant.
--------------------------------X
APPEARANCES
For the Government: Michael R. Maffei, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722

For the Defendant: Derick Hernandez, <u>Pro se</u>
                    #83519-053
                    FCI Hazelton
                    Federal Correctional Institution
                    P.O. Box 5000
                    Bruceton Mills, West Virginia  26525

SEYBERT, District Judge:

         Currently before the Court is the <u>pro se</u> motion of Defendant Derick Hernandez ("Defendant" or "Hernandez") seeking a sentence reduction pursuant to the First Step Act (the "FSA", the "Act" or the "First Step Act"), 18 U.S.C. § 3582(c)(1)(A)

(hereafter, the "Motion").[1],[2]   (<u>See</u> ECF No. 780; <u>see also</u> Reply, ECF No. 795[3]).   The Government opposes the Motion.   (<u>See</u> Opp'n, ECF No. 787).   For the following reasons, the Motion is **DENIED** without prejudice.

BACKGROUND

I.   <u>Relevant Factual and Procedural Background</u>

The Court presumes the parties' familiarity with the facts of this case.   <u>See generally</u> <u>Hernandez v. United States</u>, No. 14-CR-0264, 2021 WL 3426110, at *1-2 (E.D.N.Y. Aug. 5, 2021); <u>see</u>

---

[1]  To the extent Defendant's Motion, the Government's Opposition or this decision uses the terminology "compassionate release", the Court notes that phrase is not contained in the First Step Act; rather it is one coined by the courts to characterize a reduction in sentence pursuant to the Act.   <u>See, e.g.</u>, <u>United States v. Shakur</u>, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020); <u>see also</u> <u>United States Brooker</u>, 976 F.3d 228, 237 (2d Cir. 2020) (stating the phrase "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

[2]  Defendant also moves for appointment of counsel.   (<u>See</u> ECF No. 786.)   In the Court's discretion, it **DENIES** said appointment motion.   <u>See</u> <u>United States v. Yong</u>, No. 95-CR-0825, 2024 WL 3648259, at *5 (E.D.N.Y. (Aug. 5, 2024) (denying appointment of counsel to assist defendant in filing his compassionate release motion).   It is well-settled, "a defendant has no right to the assistance of counsel in filing a motion for compassionate release . . . ."   <u>United States v. Fleming</u>, 5 F.4th 189, 193 (2d Cir. 2021); <u>see also</u> <u>United States v. Romano</u>, 707 F. Supp.3d 233, 234 n.1 (E.D.N.Y. 2023) (citing <u>Fleming</u>).   "In any event, Defendant's submissions show he is well-able to present his arguments in support of his Motion, which is fully briefed, and he does not require assistance in advancing said Motion."   <u>Yong</u>, 2024 WL 3648259, at *5.

[3]  Herein, the Court will cite to the internal page numbers of Defendant's Motion and Reply.

also generally <u>Osborne v. United States</u>, No. 14-CR-0264, 2022 WL 1693668, at *1-3 (E.D.N.Y. May 26, 2022) (providing general background information on Rollin' 60s Crips set; decision denying co-defendant Osborne's Section 2255 habeas petition).  However, for the reader's convenience, the Court provided the following summary.[4]

Between 2010 and 2016, Defendant was a member of the Rollin 60s, a set of the Crips street gang based in Roosevelt, New York (hereafter, the "Gang").  The Gang trafficked narcotics and firearms throughout Long Island and carried out a campaign of violence, including murders, attempted murders, and assaults against members of the rival Bloods street gang.  In October 2012, suspecting a fellow Gang member, Maurice Gardner ("Gardner"), was cooperating with law enforcement officials, Defendant participated in planning the killing of Garnder.  Defendant also took part in executing that plan by luring Garnder out of his house so another Gang member could shoot Gardner.  The plan was partially successful; Gardner was shot several times, but not killed.  Instead, Gardner was left paralyzed from the waist down.

---

[4]    The Court further draws from Hernandez's Presentence Investigation Report (PSR") (<u>see</u> ECF No. 319) (sealed)) in providing its summary background.

3

In July 2015, Defendant was indicted under a 66-count Superseding Indictment, charging various racketeering and VICAR[5] offenses, weapons possession charges, and narcotics and firearm trafficking charges. Ultimately, Hernandez pled guilty to two counts of the Superseding Indictment: Count 51, Use of a Firearm in Furtherance of a Crime of Violence (i.e., the shooting of Gardner), in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii); and, Count 56, Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)(iii) et seq. During his plea allocution, Defendant admitted to his participation in planning and attempting to kill Garner. On September 8, 2016, Defendant was sentenced to 120 months imprisonment as to each count, for a total term of imprisonment of 240 months, as well as ten years of supervised release. Of significance, at sentencing and as to the drug distribution conspiracy count (Count 56), the Court rejected the Probation Department's "Career Offender" status for Hernandez, and stated that, his total offense level was 33 and his criminal history was a Category III. (See Apr. 15, 2021 Memo & Order, ECF No. 689, at 4-5 (citing Sent'g Tr., ECF No. 391); see also Statement of Reasons, ECF No. 370 (sealed), at § III.) Thus, the Guidelines range for Count 56 was 168 to 210 months (Statement of

---

[5] "'VICAR' is an acronym for 'Violent Crimes in Aid of Racketeering.'" Osborne, 2022 WL 1693668, at *2 n.2.

Reasons § III); as to Count 51, Defendant was subject to the statutory mandatory minimum of 120 months.  (See PSR ¶ 94.)

Defendant is currently 34-years-old and is serving his sentence at Federal Correctional Institution ("FCI") Hazelton in Bruceton Mills, West Virginia; he has an anticipated release date of September 21, 2034.  See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Derick Hernandez (BOP Reg. No. 83519-053), https://www.bop.gov/inmateloc/ (last visited Jan. 7, 2026) (identifying Defendant's location as "Hazelton FCI").

## II.  The Instant Motion

On June 7, 2023,[6] Defendant filed his Motion.  He claims several extraordinary and compelling reasons warranting a reduction in his sentence, to wit:  (1) based primarily upon a policy statement by former U.S. Attorney Merrick Garland regarding new federal charging guidelines, Defendant claims a "change in the law" which may be considered (see Motion at 3-5) (hereafter, the "Garland Memo Argument"); (2) the Guideline's new criminal history points policy for marijuana convictions, a non-retroactive change the Court may also consider (see id. at 5-6) (hereafter, the "Criminal History Points Argument"); and, (3) his rehabilitation (see id. at 6-7).  Defendant has not meaningfully addressed the

---

[6]  Defendant's Motion is dated June 1, 2023 (see Motion at 7), but was received and filed with the Court on June 7, 2023 (see mailing envelope, ECF No. 780 at ECF p.16; see also Motion at 1).

relevant Section 3553(a) Factors other than to assert his rehabilitation "suggests" he is "no longer a danger to society". (Id. at 7; see also Reply at 7.)  Defendant supported his Motion with two letters from fellow inmates, who both speak of his helping other inmates and his love for his daughter.  (See ECF No. 794.) Further, in a subsequent November 2023 letter, Defendant appears to raise a fourth basis for compassionate release:  family circumstances, i.e., that his daughter's mother is to be imprisoned and he has lost two close family members.  (See Family Circumstances Letter, ECF No. 796.)

Unsurprisingly, the Government opposes Defendant's Motion.  (See generally Opp'n.)  First, it contends "there has been no change in law . . . that affects the [D]efendant's sentence".  (Id. at 6.)  Second, as to Defendant's rehabilitation, acknowledging it is "commendable", the Government nonetheless maintains that "is what is expected of all defendants and [is] far short of 'extraordinary and compelling.'"  (Id.)  Finally, the Government argues consideration of the applicable Section 3553(a) Factors, which factors it addresses in detail (see id. at 13-14), require Defendant's Motion be denied since they "overwhelmingly support continued incarceration." (Id. at 13.)  It asserts "[w]hat this [D]efendant and his coconspirators did to Maurice Gardner, on its own, without more, require that the [D]efendant serve his full 240-month sentence", especially since "Gardner's life was forever

6

altered, and he was left paralyzed."  (Id. at 13, 14.)  For the reasons discussed herein, the Court agrees.

## DISCUSSION

### I.  Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025) (same).  "A

7

defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, *i.e.*, a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely on applying Section 3553(a) Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting Keitt).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are to consider whether a sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission", 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 ("Policy Statement 1B1.13"), and whether the relevant Section 3553(a) Factors favor such a reduction. See United States v. Donato, No. 95-CR-0223,

2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[7] see also Keitt, 21

---

[7] In Donato, Judge Azrack of this District explained:

> In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons. See United States v. Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020). [T]he Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants. See U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant, . . . the court may reduce a term of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "Brooker does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13." United States v. Feliz, [No. 16-CR-0809,] 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); see also United States v. Andrews, [No. 01-CR-0450,] 2023 WL 8477993, at **2-5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release). Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated. See generally U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); see also United States v. Lopez, [No. 16-CR-0317,] 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

F.4th at 71.  However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"  United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also U.S.S.G. § 1B1.13(d).  Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."  United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation

---

Donato, 2024 WL 1513646, at n.10; see also Feliz, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in United States v. Brooker, 976 F.3d 228 (2020)"), and at *4 ("Brooker does not apply to the new version of Policy Statement 1B1.13 because the Policy Statement, as amended, is now applicable to compassionate release motions brought in court by defendants. . . .  Accordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, . . . also find that granting such relief is consistent with Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." (internal quotation marks omitted)); United States v. Torres-Teyer, No. 01-CR-0021, 2025 WL 2776048, at * 3 (S.D.N.Y. Sept. 30, 2025) (stating a "defendant must show [] extraordinary and compelling reasons that, consistent with Policy Statement 1B1.13, warrant a sentence reduction . . . . " (citing Feliz, 2023 WL 8275897, at *2-4 & n.3; further citation omitted)).

omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "[A] statement that the district court has considered the statutory factors is sufficient." United States v. Torres, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order) (quoting United States v. Gammarano, 321 F.3d 311, 315-16 (2d Cir. 2003)).

"The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)). "A district court's discretion in deciding a compassionate release motion—as in all sentencing matters—is broad." Rodriguez, 147 F.4th at 222 (quoting Brooker, 976 F.3d at 237) (citation modified).

## II.  Application

### A.  Exhaustion

Defendant maintains he has exhausted his administrative remedies by having submitted a request to the warden of the

facility where he was housed when he moved for compassionate release. (Motion at 1.)  Supporting this claim, Defendant includes as an exhibit his request for compassionate release made to the warden. (See Apr. 12, 2023 Request, Ex. A, ECF No. 780 at ECF p.9.) However, there is no indication in the record regarding the warden's response thereto. (See Case Docket, in toto.)

The Government asserts it contacted a prison representative "to confirm that the defendant had in fact submitted the request", but was informed the Reduction-in-Sentence Coordinator "was unable to find any such request by Hernandez." (Opp'n at 5.)  Hence, the Government maintains it is unclear whether Defendant has satisfied his administrative exhaustion requirement. (See id.)

Finding the Government's response does not meaningfully rise to the level of an exhaustion defense, the Court deems such defense to be forfeited.  See, e.g., United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) (finding, where Government did not assert defendant failed to exhaust his administrative remedies, it "ha[d] not raised an exhaustion defense" and "ha[d] forfeited any such defense" such that court was free to consider merits of defendant's compassionate release motion" (quoting United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021)) (collecting cases); see also United States v. Diaz, No. 10-CR-0277, 2024 WL 3228347, at *2 (E.D.N.Y. June 27, 2024)

(finding, where Government discussed defendant's exhaustion of administrative remedies "only to acknowledge that it is not clear from the defendant's application whether he has exhausted" said remedies, and "d[id] not expressly raise an exhaustion defense," but "direct[ed] its opposition entirely at whether [defendant] states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release," court was free to consider merits of defendant's compassionate release motion (omitting internal quotations marks and citations)).  Therefore, it also finds Defendant has satisfied the exhaustion requirement and proceeds to consider the merits of his Motion.

   B.   <u>Defendant's Proffered Extraordinary and Compelling Circumstances</u>

       In accordance with Policy Statement 1B1.13, the Court considers Defendant's claims of extraordinary and compelling circumstances warranting a sentence reduction.  For the reasons articulated below, it finds Defendant's proffered circumstances unavailing.

       1.   <u>The Garland Memo Argument</u>

       For context, the Court provides the following:

       On December 16, 2022, [former] United States Attorney General Merrick Garland released a memorandum ("Garland [M]emo") containing new federal charging and sentencing guidelines that instruct[ed] federal prosecutors to eliminate the crack-to-powder disparity in sentencing recommendations. According to the Garland [M]emo, prosecutors

13

in crack cocaine cases should "advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine." Moreover, "[w]here a court concludes that the crack cocaine guidelines apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine."

The Garland [M]emo mentions that the Department of Justice under the [former] Biden administration ha[d] testified before Congress to voice its support of the EQUAL Act, S.79, a legislative bill that would eliminate the disparity between powder cocaine and crack cocaine sentencing. However, the EQUAL Act has since been unable to achieve bipartisan support in the Senate amid objections and is thus not the law.

(Opp'n at 7 n.6); see also Garland Memo, available at https://www.justice.gov/d9/2022-12/attorney_general_memorandum_general_department_policies_regarding_charging_pleas_and_sentencing.pdf (last visited Jan. 12, 2026)  In other words, the Garland Memo was a policy statement which communicated the former administration's Department of Justice's "support for the equal treatment of crack and cocaine powder offenses, as well as the EQUAL Act that seeks to codify this equalization into law." (Id. at 6.)

Given this backdrop, the Government aptly summarizes Defendant's Garland Memo Argument: "In light of the EQUAL Act's proposal, the amended USSG § 1B1.13(b)(6) [i.e., the section of the Policy Statement addressing consideration of unusually long

14

sentences when there has been a change in the law[8]], and the Garland [M]emo's new directives to prosecutors, the [D]efendant argues that his conviction on Count 56 for conspiracy to distribute crack cocaine would not have triggered the 10-year mandatory minimum sentence if he had been sentenced under current sentencing policy." (Opp'n at 6-7; compare Motion at 3-5.)  Indeed, Defendant asks this Court "to treat his crack cocaine offense as if it were powder cocaine and to sentence him accordingly . . . ."  (Motion at 5.)

Defendant's Garland Memo Argument is unavailing.  "As many district courts have recognized, this internal policy memo, which does not have the force of law, does not constitute an extraordinary and compelling circumstance for purposes of evaluating a motion for compassionate release."  United States v. Smith, No. 10-CR-20388, 2025 WL 465291, at *1 (E.D. Mich. Feb. 11,

---

[8]  Section 1B1.13(b)(6) states:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

2025) (collecting cases); see also United States v. Welch, No 95-CR-0142, 2025 WL 2792501, at * 7 (S.D. Ala. Sept. 30, 2025) (stating Garland Memo "is an internal policy statement for the DOJ which focuses on drug-related offenses" and finding it is not a change in law consistent with the Policy Statement) (collecting cases).  Indeed, the Garland Memo specifically notes:

> The policies contained in th[is] memorand[um], and internal office procedures adopted pursuant thereto, are intended solely for the guidance of attorneys for the government. They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States.

Garland Memo at 6 n.2; see also Goffigan v. United States, No. 16-CR-0034, 2023 WL 3550896, at *5 (E.D. Va. May 18, 2023) (finding Garland Memo "does not reflect a change to current law" and does not provide an extraordinary and compelling reason for a sentence reduction).

     In any event, the Court concurs with the Government's additional argument that Defendant is not entitled to a reduced sentence, especially: "[w]hen considering the [D]efendant's many crimes and the [G]overnment's decision to recommend 240 months' imprisonment in exchange for the [D]efendant pleading [to] just two counts of the 66-count Superseding Indictment."  (Opp'n at 10.)  These "individual circumstances" of Defendant justify his 20 years of imprisonment, and "the DOJ's new federal charging

16

guidelines would not 'produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.'" (Id.) Instead, Defendant "would likely have served a far longer sentence if not for the [G]overnment's lenient recommendation and th[is] Court's acceptance of his plea agreement." (Id.) True.

At bottom, Defendant's Garland Memo Argument is not a change in the law. And, the EQUAL Act is not enacted legislation. Therefore, this argument fails to show an extraordinary and compelling reason warranting a sentence reduction.

### 2. The Criminal History Points Argument

Defendant's Criminal History Points Argument is without merit. He contends he received extra criminal history points for a prior marijuana possession conviction and that without these points, his offense level and, therefore, his sentencing Guidelines range would have been lower. (See Motion at 5-6.) Not so.

To begin, Defendant is incorrect that he was assigned two points for his marijuana possession conviction. According to his PSR, Defendant was assessed one criminal status point for that offense for which he was sentenced to a one-year conditional discharge. (See PSR ¶63.) However, given what transpired at his sentencing, this error is of no consequence.

17

As the Court explained in its Order denying Defendant's Amendment 821 Motion, which motion also sought a sentence reduction (but based upon a two-point enhancement applied by the Probation Department) (see ECF No. 847):

> On October 13, 2016, Defendant was sentenced to 240 months of imprisonment and five years of supervised release on the two counts to which he pled guilty, i.e., a firearms charge and a drug distribution conspiracy charge. (See Judgment, ECF No. 369; Minute Entry, ECF No. 368; Statement of Reasons, ECF No. 370 (sealed); Sent'g Hr'g Tr.[, ECF No. 391]) During the sentencing hearing, as to the drug distribution conspiracy charge, the Court found the Career Offender designation did not apply to Defendant (see Sent'g Hr'g Tr. at 7-9 (striking para. 54 (the career offender paragraph) from the PSR)); therefore, it reduced Defendant's Total Offense Level from 37 to 33 and rendered his Criminal History Category to be Level III. (Of note: The Government took no position as to Defendant's Criminal History Category at sentencing. (See Sent'g Hr'g Tr. at 7.)) The result was an applicable range of 168 to 210 months of imprisonment on the drug distribution conspiracy charge. (See id. at 7-9; Statement of Reasons, § III.) Ultimately, Defendant was sentenced to 120 months of imprisonment on the drug distribution conspiracy count, followed by a consecutive mandatory minimum 120 months of imprisonment on the firearms count. . . . Moreover, in an April 15, 2021 Memorandum & Order, among other things, the Court "reaffirm[ed] that, at sentencing, it struck paragraph 54 from the PSR and concluded that it would not designate Defendant as a career offender, his total offense level was 33, and his criminal history was Category III." (Apr. 15, 2021 Memo & Order, ECF No. 689, at 6; see also id. at 3-5.)
>
> Since the record establishes the Court's amendments to the PSR subjected Defendant to

a much lower Criminal History Category, _i.e._, Criminal History Category III, than that recommended by the Probation Department, Defendant has--in essence--benefited from a "status point" reduction since the very imposition of his sentence.  Indeed, a Level III Criminal History Category is reserved for those defendants with criminal history points ranging from four (4) to six (6) points, well below the ten (10) criminal history points which the Probation Department calculated for Defendant.  (See PSR, ECF No. 319 (sealed), paras. 65-67.)  Thus, to grant Defendant's requested relief would be to bestow an added windfall upon him, which is not warranted in light of the generous ruling originally made by the Court.  In other words, Defendant has already received more than he now seeks.

(Sept. 3, 2025 Elec. ORDER (emphasis added).)  The Court re-enforced its reasoning in a subsequent order, stating, _inter alia_:

Defendant asserts his Criminal History Category should be II; therefore, together with his adjusted offense level of 33, the applicable Guidelines range should be 151 to 188 months.  (See Proffered Reply, ECF No. 879-1, at 1-2.)  Accepting as true for argument's sake Defendant's position, such an "adjusted range" on the drug distribution conspiracy charge, together with the consecutive mandatory minimum 120 months of imprisonment on the firearms count--which portion of his sentence Defendant wholly ignores in his proffered pro se Reply, would have subjected Defendant to a range of 271 months to 308 months of imprisonment.  Yet, as the Court stated in its September 3, 2025 Order, this Court imposed an aggregate sentence of 240 months of imprisonment (_i.e._, 120 months of imprisonment on the drug distribution conspiracy count, followed by the consecutive mandatory minimum 120 months of imprisonment on the firearms count), which is

> well-below the purported newly lowered
> Guidelines range Defendant would advance.

(Sept 24, 2025 Elec. ORDER (second set of emphasis added).)  Hence, the one point for Defendant's marijuana possession conviction had no effect on the adjusted Guidelines range to which the Court determined Defendant was subject.   Thus, Defendant's Criminal History Points Argument is neither extraordinary nor compelling.

### 3.  Rehabilitation

"Petitioner is very aware that his crimes are very serious." (Reply at 3.)  Yet, he asserts that is "not enough to preclude an inmate from receiving a reduction under the compassionate release statute." (Id.)  True, but more is required than rehabilitation to warrant compassionate release.  See United States v. Santana, No. 15-CR-0457, 2025 WL 1940370, at *5 (E.D.N.Y., 2025 July 15, 2025) ("The Court begins by reiterating that, notwithstanding its broad discretion in considering 'all possible reasons for compassionate release,' 'rehabilitation alone shall not be considered an extraordinary reason.'" (quoting Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (citation modified))).

"What constitutes rehabilitation is left to the [c]ourt's discretion, but courts in this district have considered the following factors: [1] the defendant's 'maintenance of familial and societal relationships; [2] letters of support both

from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5] gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value'." Vasquez, 2024 WL 2385264, at *5 (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added); see also, e.g., United States v. Qadar, No. 00-CR-0603, 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021) (same). "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)).

Recently, in denying a compassionate release motion where the defendant showed "significant strides in his rehabilitation", this Court, nonetheless, found that defendant's "commendable rehabilitation [wa]s not enough". United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *7 (E.D.N.Y. Apr. 16, 2025). In Latney, the defendant: presented evidence of maintaining familiar relationships; provided letters of support from a prison chaplain, an attorney, and fellow inmates; and, submitted a letter of contrition. See id. at *7-8. While the Court found defendant Latney's rehabilitative efforts "laudable", because there was an

absence of other extraordinary and compelling reasons, "the weight his rehabilitation efforts might have added to the Court's calculus of the totality of the circumstances [wa]s without effort". Id. at *8. Hence, the Court found no grounds to reduce defendant Latney's sentence. See id.

In comparison, Defendant's showing of rehabilitative efforts are not as persuasive as was those of Latney. While Defendant: (1) acknowledged the seriousness of his offenses; (2) represents "he has not engaged in a single violen[t] act during the entire 10 years of his imprisonment" (Reply at 1), which the Government does not dispute; (3) continues to avail himself of various courses and programs, which is praiseworthy; and (4) has offered two support letters from fellow inmates, he has not, for example: (a) offered his own letter of contrition; (b) provided letters of support from prison staff; or (3) presented evidence of maintaining familial relationships. Though Defendant's rehabilitation efforts are laudable, "[m]aintaining good conduct in prison is not uncommon, and indeed is expected." United States v. Garcia, No. 19-CR-0210, 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022); see also United States v. Baptiste, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) ("[A] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction here." (citation modified));

see also, e.g., Alvarez, 2020 WL 4904586, at *7 (recognizing "model prison conduct is expected").

 Moreover, even if Defendant's rehabilitation efforts were extraordinary and compelling, because he is unable to demonstrate any other extraordinary and compelling circumstance, such rehabilitation would have no effect.  As the Court elucidated in Latney:

> Here, the only factor Latney is able to demonstrate as within the purview of being "extraordinary and compelling" is his rehabilitative efforts.  However, laudable as those efforts are -- and, the Court finds Latney's efforts are laudable in this instance -- it is also well-settled that the Court may not make an "extraordinary and compelling" finding based solely upon a defendant's rehabilitation.  See Brooker, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'") (citing 28 U.S.C. § 994(t); emphasis added in Brooker); cf., e.g., United States v. Russo, 643 F. Supp. 3d 325, 332 [(E.D.N.Y. 2022)] ("[R]ehabilitation alone would not suffice as extraordinary and compelling, but it weighs in [defendant's] favor alongside consideration of multiple other factors.").  Thus, because the Court finds Defendant's other proffered reasons for granting his Motion are neither extraordinary nor compelling, the weight his rehabilitation efforts might have added to the Court's calculus of the totality of the circumstances is without effect; hence, there is no ground to reduce Defendant's sentence.

Latney, 2025 WL 1126474, at *8; see also , e.g., United States v. Rodriguez, No. 96-CR-0959, 2025 WL 212766, at *5 (S.D.N.Y. Jan.

26, 2025) ("While Rodriguez's efforts at rehabilitation through completing numerous educational programs (and recently receiving his GED), serving as a mentor to other inmates, and maintaining a relationship with his family are commendable, rehabilitation is 'not, by itself, an extraordinary and compelling reason' for a sentence reduction." (citations omitted)); United States v. Tillman, No. 13-CR-0362, 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) ("While the Court commends Tillman for apparently participating in positive prison programs, obtaining a GED, and maintaining a clean disciplinary record, as well as for his plans to transition back to society, the Court does not find this progress and future plans to constitute extraordinary and compelling reasons meriting release even in conjunction with [consideration of other factors.]"). At bottom, upon the record presented, Defendant's rehabilitative efforts are neither extraordinary nor compelling that they warrant a sentence reduction.[9]

---

[9] Nonetheless, such rehabilitative efforts are not without reward; Defendant may be able to earn FSA Time Credits which would accelerate his release date. "Defendant is urged to continue pursuing all available rehabilitation opportunities and fully utilize the BOP Time Credits programs and activities in order to achieve . . . early release, if available to him. Similarly, as it appears he has been doing, Defendant is encouraged to mentor younger inmates while he remains incarcerated, especially by way of his example in maintaining a blemish-free disciplinary record." Latney, 2025 WL 1126474, at *8 n.3.

4.    Family Circumstance

Because Defendant is proceeding pro se, the Court has construed his Family Circumstances Letter liberally; it is deemed to amend Defendant's Motion and interpreted to raise an argument of family circumstances as an extraordinary and compelling reason warranting a sentence reduction.  See, e.g., United States v. Cabral, No. 12-CR-0336, 2025 WL 3628402, at *6-8 (E.D.N.Y. Dec. 12, 2025) (construing pro se defendant's compassionate release motion to raise his health, the alleged harsh conditions-of-confinement caused by the COVID-19 Pandemic, and his rehabilitation efforts as extraordinary and compelling reasons warranting a sentence reduction); see also generally Maisonet v. Metro. Hosp. & Health Hosp. Corp., 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (construing pro se motion liberally and interpreting it to raise the strongest arguments said motion suggests) (internal quotation marks omitted); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006). However, "[a]lthough [courts] accord filings from pro se litigants a high degree of solicitude, even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief."  Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 632-33 (2d Cir. 2016) (quoting Donofrio v. City of N.Y., 563 F. App'x 92, 93 (2d Cir. 2014) (summary order).  Unfortunately, neither family

circumstance alluded to is sufficient to establish and extraordinary and compelling circumstance.

       a.   Daughter's Care

       Defendant asserts that his daughter's mother "has gotten herself in trouble and now she's soon to have to do prison time. Which leaves [his] Daughter with no Mother or Father." (Family Circumstances Letter at (unnumbered) 1.) Thus, Defendant wants to take care of daughter. (See id. at (unnumbered) 1-2.) While such a desire is understandable, unfortunately, other than Defendant's bald representation, there is nothing before the Court establishing Defendant is his daughter's only other care provider. "Typically, district courts find that an inmate's family circumstances do not amount to an 'extraordinary and compelling' reason within the meaning of 18 U.S.C. § 3582(c)(1)(A), in the absence of evidence that the prisoner is actually the sole caregiver." United States v. Gonzales, No. 15-CR-6085, 2023 WL 6386139, at *4 (W.D.N.Y. Oct. 2, 2023) (emphasis added) (collecting cases). Thus, "given the absence of relevant, contemporary information regarding [Defendant's daughter] and [her] current care, the Court is unable to assess whether this circumstance is extraordinary thereby warranted compassionate release. In other words, Defendant has failed to carry his burden to show the circumstance regarding his [daughter] is extraordinary." United

States v. Hopkins, No. 18-CR-0606, 2024 WL 4388454, at *4 (E.D.N.Y. Oct. 2, 2024).

> Likewise, Defendant's desire to have more involvement in his daughter's life, while laudable, is not grounds for granting his Motion.  Indeed, the Court would be hard-pressed to find an incarcerated parent who does not wish to be a greater part of his or her child's life; by its mere near-universality, this reason for wanting to be released from prison is no more than ordinary and provides no support for Defendant's Motion.

United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023).

### b.   Family Members' Deaths

Defendant also raises the deaths of his brother (see Reply at 6-7; Family Circumstances Letter at (unnumbered) 1)) and his great aunt, who he characterizes as being "like a third mother" (Family Circumstances Letter at (unnumbered) 1)).  The implication is that the grief Defendant has suffered from the loss of both these family members is an extraordinary and compelling reason warranting a sentence reduction.  The Court is unconvinced.

Recently, when a defendant sought compassionate release given the grief he and his family were suffering from the loss of one of the defendant's sons, this Court wrote:

> The late Queen Elizabeth II of England is attributed with saying:  "Grief is the price we pay for love."  While the [] death of Defendant's son was undoubtedly tragic, its accompanying grief, unfortunately, is part of

27

> the human condition.  Grief is not exclusive
> to those who are incarcerated.  Hence, the
> Court is restrained from finding Defendant's
> grief . . . to be extraordinary or compelling
> in the context of the FSA.

United States v. Gamble, No, 18-CR-0606, 2025 WL 3089386, at *4 (E.D.N.Y. Nov. 4, 2025).  The same holds true here.  Moreover, "while it is understandable Defendant would like . . . to heal alongside his family, neither is that wish extraordinary nor compelling."  Id. (citation modified).[10]

–*–*–*–

At bottom, individually or collectively, the proffered circumstances Defendant presents do not rise to the level of extraordinary or compelling.  Therefore, there is no basis to grant Defendant's Motion.

C.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"  Jones, 2023 WL 8613867, at *2; see also

---

[10]  As the Cort clarified in Gamble:  "[T]he Court's rejection of Defendant's grief argument is by no means meant to diminish the depth of loss felt by Defendant and his family."  Gamble, 2025 WL 3089386, at *4 n.5.  Instead, "[g]rief turns out to be a place none of us know until we reach it."  Joan Didion, A Year of Magical Thinking 188 (2005) (quoted in Gamble).  The Court offers its condolences on Defendant's losses.

<u>Keitt</u>, 21 F.4th at 73 n.4 (noting "a district court may rely solely on the § 3553(a) factors when denying defendant's motion for compassionate release"); <u>United States v. Andrews</u>, No. 23-8046-CR, 2025 WL 2938044, at *3 (2d Cir. Oct. 16, 2025) (summary order) (same; quoting <u>Keitt</u>); <u>Jones</u>, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting <u>United States v. Robinson</u>, 848 F. App'x 477, 478 (2d Cir. 2021)); <u>United States v. Mayes</u>, No. 23-6077-CR, 2024 WL 2990909, at *1 (2d Cir. June 14, 2024) (summary order) (same; quoting <u>Jones</u>).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

<u>United States v. Johnson</u>, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

Other than claims he is no longer a danger to the community (<u>see</u> Motion at 7; Reply at 7), Defendant has not addressed the Section 3553(a) Factors. In comparison, the Government has. (<u>See</u> Opp'n at 13.) As to the "nature and

circumstances of the offense" and the need to impose a sentence "reflecting the seriousness of the offense", the Government highlights, in addition to participating in a conspiracy to distribute crack cocaine while armed, as well as the multiple other crimes with which Defendant was charged (but which counts were dismissed pursuant to a plea agreement), defendant actively participated in the conspiracy to murder Gardner, which resulted in Garner spending 30 days in a coma and being permanently paralyzed from the waist down. (See id.) The Government further argues: "[D]efendant's crime demonstrate a complete disregard for the rule of law and the safety of the community," given his willingness "to kill to protect his interests and the interests of the [Gang]." (Id.) It advances the position that defendants, like Defendant, "who break the law while still owing a debt to society from prior criminal conduct", should be subject to substantial custodial sentenced, which sentences "are among the best ways . . . to communicate to the public that they will be protected, that the guilty will be punished, and the guilty will be required to serve [their] entire sentence." (Id.) The Government's arguments are persuasive.

The Court finds the seriousness of Defendant's offenses is the factor weighing most heavily in favor of denying his compassionate release Motion. See United States v. Baker, No. 97-CR-0877, 2025 WL 2733358, at *9-10 (E.D.N.Y. Sept. 25, 2025)

(finding, where defendant "killed [another] in cold blood in order to obstruct justice weighing most heavily in favor of denying" sentence reduction); United States v. Duarte, No. 99-CR-0192, 2025 WL 1434886, *8 (S.D.N.Y. May 19, 2025) (finding "the heinousness and gravity of [defendant's] criminal conduct", i.e., ordering the execution of a DEA informant to prevent informant from testifying against defendant, was the Section 3553(a) Factor weighing heavily against defendant's release); United States v. Marmolejos, No. 99-CR-1048, 2021 WL 3862851, *5 (S.D.N.Y. Aug. 30, 2021) (Chen, J., sitting by designation) (where defendant's offense was murder-for-hire, stating it was "primarily the 'nature and circumstances'" of said offense that weighed against a sentence reduction and that granting a reduction would not reflect the seriousness of the offense); cf. United States v. Santos, No. 01-CR-0537, 2024 WL 4212024, at *4 (E.D.N.Y. Sept. 17, 2024) (denying compassionate release motion of hired hit-man who killed the "wrong" people; finding considerable risk that a sentence reduction would "not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public" (citation omitted)). The seriousness of Defendant's offenses continues to outweigh any purported extraordinary circumstance Defendant has presented.

Moreover and relatedly, "[t]his Court has repeatedly observed in gang-related cases: '[G]ang members need to know their

31

violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences.'" United States v. Gerald, No. 13-CR-0141, 2024 WL 4694004, at *7 (E.D.N.Y. Nov. 6, 2024) (quoting Lake, 2023 WL 8810620, at *6; citing United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *8 (E.D.N.Y. May 31, 2024) (quoting Lake)); see also United States v. Henriquez, No. 01-CR-0537, 2024 WL 4450851, at *6 (E.D.N.Y. Sept. 17, 2024) (same). "It is no different here." Id.; see also Henriquez, 2024 WL 4450851, at *6 (stating, "[t]he same holds true—and, more so—here, especially when recognizing the underlying crime was an execution-style murder" which "demonstrated disrespect for the law and, more significantly, disrespect for human life"). As astutely stated by the Government: "What this [D]efendant and his [fellow Gang member] coconspirators did to Maurice Gardner, on its own, without more, require that the [D]efendant serve his full 240-month sentence." (Opp'n at 13.) The Court does not disagree.

At bottom, to the extent there are any sentencing factors which weigh in Defendant's favor, e.g., Defendant being assessed as having a medium risk of recidivism (see, e.g., Ex. B, ECF No. 780 at ECF pp.11), and his incarceration having provided him with needed educational and vocational training, those favorable factors are outweighed by the combined force of the nature and

32

circumstances of the offense, and the need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; and, afford adequate deterrence to criminal conduct. See, e.g., Hopkins, 2024 WL 4388454, at *4 (in gang-related case, finding below-Guidelines sentence "continue[d] to be appropriate to, inter alia: promote respect for the law; reflect the seriousness of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the [d]efendant, thereby satisfying the applicable Section 3553(a) Factors"); see also, e.g., United States v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *7 (E.D.N.Y. Nov. 14, 2024) (same; stating further "for individual and general deterrence purposes, it is necessary that those who participate in the illegal drug trade, which plagues Long Island communities, be sent a clear and unambiguous message that if they do, they will be prosecuted, sentenced to substantial sentences, and be required to serve every day of those sentences" (citation modified)); cf., e.g., Lake, 2023 WL 8810620, at *6 (stating, as to gang member participating in the illicit drug trade, "those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences"); Wagner, 2024 WL 2801981, at *8 (quoting Lake).  Hence, here, it would be antithetical to the purposes of the Section 3553(a) Factors to grant Defendant a sentence reduction.  At bottom,

Defendant's substantial below-Guidelines sentence of 240 months' incarceration continues to be "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)." (Statement of Reasons, § VIII (uncapitalized).)

–*–*–*–

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion seeking a sentence reduction (ECF No. 780) is **DENIED** in its entirety and without prejudice;

**IT IS FURTHER ORDERED** that Defendant's Motion for Appointment of Counsel (ECF No. 786) is DENIED in its entirety; and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  January 14, 2026
        Central Islip, New York